UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S2-4:10 CR 119 CEJ (TIA) |
| | ) |
| LELAND BEASLEY, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S POST EVIDENTIARY HEARING BRIEF CONCERNING THE
DECEMBER 9, 2010 SUPPLEMENTAL EVIDENTIARY HEARING**

COMES NOW, the United States of America, by and through Richard G. Callahan,

United States Attorney for the Eastern District of Missouri, and Robert F. Livergood, Assistant

United States Attorney for said District, and for its Post Evidentiary Hearing Brief in Opposition

to Defendant's Motions to Suppress Evidence and Statements, states as follows:

**I.  INTRODUCTION**

The defendant has been indicted by a second superseding indictment on nine counts of

production of child pornography and two counts of possession of child pornography.  The

government has previously filed memoranda concerning defendant's motions to suppress

statements and evidence.  This memorandum is filed concerning issues of the Sixth Amendment

right to counsel and inevitable discovey.  The government relies on this memorandum as well as

the others filed in this matter in responding to all of defendant's claims concerning his motions

to suppress.

An evidentiary hearing was conducted on August 30, 2010.  A supplemental evidentiary

hearing was conducted on December 9, 2010.  The evidence adduced at the evidentiary hearings

1

showed that the statements made by defendant and the property searched and seized should not

be suppressed.

## II.  FACTS

The Government relies on the facts contained in previously filed memoranda as well as

those adduced at the evidentiary hearings.  The following facts are supplemental to those

contained in the government's prior memoranda:

On December 9, 2010, Detective Cavaletti testified that he has been a law enforcement

officer with the St. Louis County Police Department for ten years.  His current assignment

involved the investigation of allegations of child abuse.  On January 5, 2009, Det. Cavaletti

began his investigation concerning the allegations made by K.N., a minor.  K.N. said that he was

sexually abused by defendant touching his penis over the clothing.  He made no allegations that

defendant produced or possessed child pornography.  During the course of the investigation,

K.N. identified other individuals who may have been victims of the defendant: Brian N.,

Brennon N., K.A. and L.D, all minors.  As part of the investigation on January 5, 2009, Brian N.,

Brennon N,. K.A., and L.D. were interviewed.  Brian N. said that one time at one of defendant's

Gamestation Sector 19 stores, he and L.D. observed child pornography on a computer located in

the store but did not recognize the children in the images.  Brian N. did not know who put the

child pornography on the computer and never claimed that he saw defendant viewing the child

pornography.  Brian N. never saw defendant photographing or filming naked children or children

involved in sexual activity.  However, Brian N. did say that one time while at one of defendant's

Gamestation Sector 19 stores, defendant lay next to him and loosened Brian N.'s belt.

Another child interviewed on January 5, 2010, was L.D.  L.D. also observed child

pornography on a computer at one of defendant's Gamestation Sector 19 stores. Like Brian N., he did not know how the child pornography was placed on the computer and did not know the individuals depicted. He never saw defendant viewing the child pornography. He also never saw the defendant photographing or video recording any naked child or a child involved in sexual activity.

Another child interviewed on January 5, 2010, was Brennon N. Brennon N. said that he observed defendant performing oral sex on Brian N., a child by the name of Ryan, and R.I. Det. Cavaletti determined that Brennon N. should be interviewed by interviewers at the Child Advocacy Center. The appointment was made on January 7, 2009.

Det. Cavaletti and Sgt. Guinn then went to interview defendant at his Gamestation Sector 19 store. Det. Cavaletti testified that there was no show of force. He testified that defendant was informed that they wanted to talk to him about something privately and defendant asked the customers, who were children, and his employee, Timothy Douglas, to leave the store. Defendant was not questioned at the store but was asked to sign consent to seize and search the computer located at the store. Gov. Ex. 1. Defendant voluntarily signed Gov. Ex. 1.

Defendant was then asked if he would accompany the officers to police headquarters in Clayton, Missouri. Defendant voluntarily agreed and rode with Det. Cavaletti in the front seat of Det. Cavaletti's unmarked police car. Defendant was not handcuffed. Once at police headquarters, defendant again voluntarily signed a consent to search form to search the computer. Gov. Ex. 4. The computer was searched later that day and nothing of evidentiary value was found on the computer. Later that night, the computer was returned to Timothy Douglas, an employee of the defendant, at the request of defendant.

3

After defendant signed Gov. Ex. 4, he was given his <u>Miranda</u> rights.  Gov. Ex. 2. Defendant waived his rights and agreed to speak with the officers.  He was questioned and after the questioning was completed, he was arrested.  Defendant was booked and held in jail pending the application of an arrest warrant.

Later that night, officers went to Leslie Moss' residence.  Ms. Moss is defendant's mother.  The officers asked Ms. Moss for permission to search the computers located at her residence and she gave them consent.  The officers searched the computers at Ms. Moss' residence and did not find anything of evidentiary value.  Det. Cavaletti testified that the child pornography investigation had reached a dead end because there were no further leads.

On January 6, 2009, the investigation concerning sexual abuse continued.  Det. Cavaletti received additional leads.  As a result of the leads, T.R., T.E., and A.R., all minors,  were interviewed on the same date.  T.R. did not allege that he was sexually abused, nor did he say that he saw the defendant photographing or recording naked children or children involved in sexual activity.  T.E. said that once when he was at a lock-in at defendant's Gamestation Sector 19 store he woke up to defendant rubbing his back and butt area.  T.E. never said that he saw defendant photographing or video recording naked children or children involved in sexual activity.  A.R. said that defendant made comments that A.R. thought were sexual in nature.  A.R. never said that defendant photographed or video recorded naked children or children involved in sexual activity.  I.R., a minor, was interviewed and never said that he saw defendant photographing or video recording naked children or children involved in sexual activity.

 E.T., a minor, was interviewed on January 6, 2009.  E.T. said that defendant touched his penis once through the clothing but E.T. did not know if the touching was accidental or

intentional.  R.B., a minor, was also interviewed.  He stated that one time he woke up at a lock-in and his pants were undone.

Timothy Douglas was also interviewed on January 6, 2009.  Mr. Douglas was an employee of defendant's at the Gamestation Sector 19 store.  Mr. Douglas said that on January 5, 2009, defendant called him from jail and asked him to take some items from the Gamestation Sector 19 store to his mother's (Ms. Moss) residence.  Mr. Douglas said that he took a digital camera, video camera and clothes to Ms. Moss' residence.

Later, on January 6, 2009, Det. Cavaletti applied for an arrest warrant for defendant.  A one count complaint was filed in St. Louis County Circuit Court charging defendant with Child Molestation in the First Degree involving the victim K.N.  Det. Cavaletti testified that the investigations concerning the other potential victims was still ongoing.

On January 7, 2009, defendant was arraigned on the complaint and Christine T. Goulet, an attorney, entered her appearance on behalf of defendant.  Det. Cavaletti's investigation continued as well.  On that same date Brennon N. was interviewed at the Children's Advocacy Center.  Det. Cavaletti also received information that T.E. might have additional information. T.E. was interviewed but nothing new was learned.  Det. Cavaletti learned that M.L. might be a potential victim of defendant after M.L.'s mother called the police department.  M.L. was then interviewed.  M.L. said that he was sexually abused by defendant.

On January 9, 2009, Det. Cavaletti was informed that R.B. might have additional information.  An interview of R.B. was scheduled at the Children's Advocacy Center on January 12, 2009.  On that same date defendant's ex-wife, Ms. Day, called Sgt. Guinn and a meeting was arranged concerning the investigation.

On January 12, 2009, R.B. was interviewed at the Children's Advocacy Center. During the interview he said that defendant touched his waist and back area.

On January 13, 2009, Sgt. Guinn met with Ms. Day. She said, among other things, that she had been married to defendant. She divorced him and as part of that divorce she was to receive a vehicle from the defendant. She took the vehicle from defendant's Gamestation Sector 19 store and went through it to find and return defendant's personal items. As she was going through the vehicle she found several disks. She said that she and her current husband reviewed the disks and saw images of child pornography. She then turned the items over to the St. Clair County Sheriff's Department. She also gave information to Sgt. Guinn that M.T. might be a victim.

On January 15, 2009, Det. Cavaletti obtained the disks from the St. Clair County Sheriff's Department. These were the disks that Ms. Day had found and turned over to the sheriff's department.

On January 16, 2009, Det. Cavaletti reviewed the disks and observed hundreds of images of child pornography. Some of the images depicted children sleeping with the genitals exposed. One of the images appeared to be an image of R.B., sleeping, with his penis exposed. Det. Cavaletti notified Sgt. Guinn of his findings. Sgt. Guinn then went to Ms. Moss' residence and talked with her. She told him, among other things, that Mr. Douglas had brought defendant's cameras, camera bag, clothes, and black lock box from 710 Lemay Ferry (Gamestation Sector 19 store) to her residence. With her consent, he seized several items including cameras, a camera bag, and a black lock box. Gov. Ex. 3. At that time, pertaining to the investigation, Sgt. Guinn knew, among other things, that Mr. Douglas took defendant's cameras, and other items, from the

6

Gamestation Sector 19 store to Ms. Moss' residence at the defendant's request after he was arrested and while in jail; he knew that Ms. Moss said that defendant's cameras, camera bag, clothing, and black lock box were brought there by Mr. Douglas; he knew that Ms. Day had observed child pornography on the disks that had been in defendant's vehicle; he knew that Det. Cavaletti reviewed the disks and viewed child pornography including an image of a child that he had interviewed during the course of the investigation.

On January 16, 2009, M.T. was interviewed as a potential victim.

On January 19, 2009, Det. Cavaletti testified that because of the images that were observed on the disks, the officers were going to ask the defendant about the child pornography and ask for consent to search the cameras and black lock box.  He testified that if they had not learned of the child pornography, they would not have attempted to speak with defendant again. It was only because of these new offenses that the officers planned to contact the defendant.

On January 19, 2009, the officers contacted a State Assistant Prosecuting Attorney concerning obtaining consent from defendant to search the items and, if the defendant refused to give consent, obtaining a search warrant to search the items.

On January 19, 2009, defendant was taken from the St. Louis County Justice Center to the police department.  Defendant was in custody.  The purpose of taking the defendant to the police department was to interview him regarding the child pornography that was found and to ask for consent to search the cameras and black lock box.  At the police department, defendant was presented with the evidence, which included the black lock box and cameras.  He was asked if would consent to the officers searching the items.  He orally consented to the officers searching the cameras and the black lock box.  He was then asked to sign the consent to search

7

forms.  He voluntarily signed Gov. Ex. 5 granting consent to search the cameras.  When he was asked to sign Gov. Ex. 6 for consent to search the black lock box, he said that he did not know if the box was his.  In response, Det. Cavaletti described the box and told defendant where the box had come from, among other things.  Defendant was also asked for the combination to the black lock box so the officers would not have to break the lock.  Defendant said he could not remember the combination.  Det. Cavaletti did not consider this exchange to be an interrogation.  Defendant then signed Gov. Ex. 6.  After defendant voluntarily signed the consent forms he was advised of his <u>Miranda</u> rights.  After he was advised of his <u>Miranda</u> rights, defendant refused to sign the <u>Miranda</u> form and invoked his right to counsel.  Defendant was transported back to the Justice Center.

On February 25, 2009, defendant was indicted in State court on ten counts.  Count one of the indictment was the same offense that was in the complaint.  Counts two through ten involved different victims.  Det. Cavaletti testified that the offences occurred at different times; it was not one event.  Gov. Ex. 7.  None of these offenses involved child pornography.  Gov. Ex. 7.

The investigation continued, including searching the cameras, disks, and black lock box.  The computer disks and cameras were forensically examined.  The forensic examination was completed around May 2009 or after.  Child pornography was located on these items.

On March 23, 2010, the United States indicted defendant in the instant cause number and a second superseding indictment was filed on July 1, 2010.  The federal indictment charges defendant with the offenses of production of child pornography and possession of child pornography.  Det. Cavaletti testified that K.N. is not a victim in any of the government's charged offenses.

On August 18, 2010, a superseding indictment was filed in State court adding counts eleven through fourteen for the offenses of promoting child pornography and possessing child pornography.  Gov. Ex. 7.

## III.  LEGAL ANALYSIS

A       <u>Sixth Amendment</u>

In addition to the claims previously raised, the defendant claims that his Sixth Amendment right to counsel was violated on January 19, 2009, when the police asked defendant for consent to search various items including the cameras and a black lock box.

1.      <u>The Sixth Amendment Right to Counsel does not attach until the initiation of adversary judicial criminal proceedings.  The Sixth Amendment Right to Counsel Attached on January 7, 2009.</u>

The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  The Sixth Amendment right to the assistance of counsel is violated when the government deliberately elicits incriminating statements from an accused after the right has attached. <u>Massiah v. United States</u>, 377 U.S. 201, 203-204 (1964).   The Sixth Amendment right to counsel "does not attach until 'the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"

<u>United States v. Morriss</u>, 531 F.3d 591, 593 (8th Cir. 2008), <u>citing</u> <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972).  On January 6, 2009, a complaint was filed in the  Circuit Court of St. Louis County, State of Missouri, in cause number 09SL-CR00060.  <u>See</u> Gov. Ex. 7.  The complaint alleged that the defendant "knowingly subjected K.N., who was then less than fourteen years old, to sexual contact by placing his hand on the penis of K.N., over K.N.'s

9

clothing, in violation of MO. REV. STAT. § 566.067 (Child Molestation in the First Degree). According to the circuit court docket sheet, on January 7, 2009, Christine T. Goulet entered her appearance on behalf of the defendant and the defendant was arraigned.  Thus, on January 7, 2009, defendant's Sixth Amendment right to counsel attached to the pending charge of Child Molestation in the First Degree.

        2.    <u>The Sixth Amendment Right to counsel attaches only to the charged offense and to offenses that are the same as the charged offense as defined by the Blockburger test.  The Sixth Amendment Right to counsel attached to the Child Molestation in the First Degree offense concerning K.N. but not to any other offense.</u>

        "The Sixth Amendment right, however, is offense specific.  It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced. . . ."  <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991); <u>United States v. Johnson</u>, 352 F.3d 339, 343 (8th Cir. 2003).  The Sixth Amendment does not attach to crimes that are not yet charged.  <u>Moran v. Burbine</u>, 475 U.S. 412, 431 (1986) ("The Court made clear [in <u>Maine v. Moulton</u>, 474 U.S. 159, 180 (1985)], however, that the evidence concerning the crime for which the defendant had not been indicted-evidence obtained in precisely the same manner from the identical suspect-would be admissible at a trial limited to those charges."); <u>see also</u> <u>United States v. Mullins</u>, 613 F.3d 1273, 1286 (The court wrote concerning the co-defendant's claim, "even assuming without deciding that Ms. Edwards enjoyed a Sixth Amendment right to counsel between indictments, the right pertained only to the offenses charged in the original indictment (or those that would be considered the same offense under the <u>Blockburger</u> test). With respect to other offenses that appeared only in later, superseding indictments, the criminal adversary process simply hadn't begun; the Sixth Amendment hadn't been triggered.").  In the instant case, the only offense to which the Sixth Amendment right to counsel attached was the offense of Child Molestation in

the First Degree involving K.N.  The Court should not consider crimes that were not charged, except as explained below.  Here, the only investigation that was completed was that involving K.N. as a victim; the other investigations were ongoing or had not yet begun on January 7, 2009. The only offense contained in the complaint was the offense that involved K.N. as a victim. That same offense involving K.N. as a victim, and no additional offenses involving K.N. as a victim, was contained in the indictment and superseding indictment filed by the State of Missouri.  The United States did not charge defendant with an offense that involved  K.N. as a victim.

In determining an offense to which the Sixth Amendment attaches, the Court is not limited to the four corners of the charging document.  Texas v. Cobb, 532 U.S. 162, 172-73 (2004).  Some courts, however, erroneously interpreted an offense to include offenses that are "closely" or "factually" related or "inextricably intertwined."  See, e.g.,  United States v. Covarrubias, 179 F.3d 1219, 1223 (9th Cir. 1999); United States v. Melgar, 139 F.3d 1005, 1013 (4th Cir. 1998), United States v. Doherty, 126 F.3d 769, 776 (6th Cir. 1997).

The Supreme Court rejected the closely or factually related or inextricably intertwined approach.  Cobb, 532 U.S. at 162; United States v. Coker, 433 F.3d 39, 43 (1st Cir. 2005). Instead, the Court in Cobb adopted the Blockburger test to determine whether two offenses were the same for purposes of Sixth Amendment.  The Blockburger test states that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  Cobb, 532 U.S. at 173, quoting Blockburger v. United States, 284 U.S. 299, 304 (1932); see also Mullins, 613 F.3d. at 1286.  In Mullins, the court

11

wrote:

> [T]he government remains free to seek uncounseled statements from a defendant about uncharged offenses without offending the Sixth Amendment.  That said, the scope of the Sixth Amendment right is not completely defined by "the four corners of a charging instrument": its bar against the government seeking incriminating statements from the defendant "encompass[es] offenses that, even if not formally charged, would be considered the same offense under the <u>Blockburger</u> test." Apart from this narrow exception, however, there is no Sixth Amendment right to counsel for uncharged offenses, even if they are "closely related to" or "inextricably intertwined with" charged offenses.

<u>Mullins</u>, 613 F.3d at 1286 (citations and notes omitted).  Thus, if a second offense is considered a separate offense under the Double Jeopardy clause, it must also be treated as a separate offense for Sixth Amendment purposes.  <u>Henderson v. Quarterman</u>, 460 F.3d 654, 663 (5th Cir 2006).  Accordingly, for the Court to determine if the Sixth Amendment right to counsel attached to any other crime, other than that charged in the complaint, the Court should use the <u>Blockburger</u> test.

"Under <u>Blockburger</u>, '[i]f each offense requires proof of an element not required by the other, the crimes are not considered the same, and a double jeopardy challenge necessarily fails.' . . . [T]he <u>Blockburger</u> test 'focuses on the statutory elements of the offense, rather than the evidence presented at trial.'  In addition, a proper analysis of a double jeopardy claim requires . . . examin[ation] not only the statutory provisions at issue, but also the specific charges brought against the defendant."  <u>United States v. Gamboa</u>, 439 F.3d 769, 809 (8th Cir. 2006); <u>United States v. Sandstrom</u>, 594 F.3d 634, 654-55 (8th Cir. 2010).  Furthermore, the court looks to the offenses that were charged, not those that could have been charged.  <u>Henderson</u>, 460 F.3d at 663. In <u>Henderson</u> the court wrote,

> "Henderson was charged with kidnapping . . .; [later] she was charged with capital child murder. . . .  Although Henderson is correct that she could have been charged with murder in the course of a kidnapping, . . . she was charged, instead, with the murder of a child under age six. . . . Under the <u>Blockburger</u> test, each offense for which she was

charged requires proof of a fact that the other does not. The kidnapping charge requires that the child have been taken from his guardians, while the capital child-murder charge requires that the child have been killed. Like the burglary and capital murder offenses in <u>Cobb</u>, the kidnapping and capital child-murder charges here constitute separate offenses under <u>Blockburger</u>."

<u>Henderson</u>, 460 F.3d at 663.

                a.      <u>Application of Cobb holding in United States v. Cook</u>.

An application of the <u>Cobb</u> holding is found in the unreported case of <u>United States v. Cook</u>, 2008 WL 728883 (W.D. N.Y.).  On March 29, 2007, Investigator Kevin Garvey of the Monroe County Sheriff's Department executed a search warrant at Scott Cook's residence and wanted to talk to Cook regarding allegations of child abuse.  <u>Id</u>. at *1.  The allegations  stemmed from Cook's stepdaughter, Ashley, claiming that when she was fifteen years old Cook started rubbing her legs, made her take her shirt off and walked in on her while she was showering. Cook later started to sneak into her bedroom at night and touched her over her clothing.  His actions progressed to touching her genitals and breasts under the clothing.  <u>Id</u>. at *2.  He also took naked photographs of her and her friends.  <u>Id</u>.  Ashley saw these pictures on Cook's computer.  <u>Id</u>.

Garvey and other law enforcement officers arrived at defendant's residence wearing plain clothes. Id. at *3.  They were armed but their firearms were concealed.  Cook's father met the officers at the door and then he went to get Cook.  Garvey introduced himself to Cook and displayed his badge and identification.  Garvey said he had Ashley's side of the story and wanted to get his side of the story.  Garvey asked Cook to accompany him to the police station.  Garvey told Cook that he would be returned to his residence after their interview.  Cook agreed to accompany Garvey to the police department.  Garvey informed Cook of his <u>Miranda</u> rights and interviewed Cook.  <u>Id</u>.

Cook was charged and arraigned on April 12, 2007, for the offense of rape in the first degree in violation of the New York State Penal Law.  Id. at *5.  On August 24, 2007, Special Agent Brian Korzak, of the United States Immigration and Customs Enforcement, went to the hospital where Cook was located to execute a federal arrest warrant on Cook.  The arrest warrant was for the offenses of possession of child pornography, receipt of child pornography, and production of child pornography.  Id.  Korzak met Cook at the hospital, displayed his credentials and explained that he was there to arrest Cook and that Cook had to accompany him.  Cook asked whether he would be able to call an attorney.  Once in Korzak's vehicle, Cook was handcuffed and advised of his Miranda rights.  Defendant agreed to waive his rights. Id. at *5-6. He was not questioned until he arrived at the Federal Building.  Id. at *6.  Cook was questioned about pictures he had taken of Ashley when she was under 18 years of age.  When asked if he would identify certain images of Ashley, Cook said that he thought he should call an attorney first.  At that point questioning ceased.  Id.

Cook claimed, among other things, that the statements he made on August 24, 2007, should be suppressed because his "right to counsel had attached in connection with related state charges, and consequently could not be waived absent the presence of counsel. . . ." Id. at *7. The district court relied on Texas v. Cobb.   In applying the Bockburger test as instructed by the Supreme Court in Cobb, the district court found that rape case in violation of New York State Penal Law, "on which [Cook] was represented by counsel, [was] a different offense than any of those crimes for which Korzak arrested the defendant, pursuant to a warrant, on August 24, 2007." Id. at *13.  The court found that the rape charge was distinct from the possession of child pornography, receipt of child pornography and production of child pornography charges based

14

upon the <u>Blockburger</u> test.   The court concluded that the "although [Cook] was represented by counsel on a related state crime, the Sixth Amendment did not bar Korzak from interviewing [Cook] on the federal charge for which he was arrested."  <u>Id</u>. at *14 (citation omitted).

The Sixth Amendment was not violated even though Korzak knew that Ashley was the victim in the state and federal cases and even though Ashley had told law enforcement officers that she was photographed by Cook prior to Cook being charged in state court. The reason the Sixth Amendment was not violated was that defendant was questioned about charges to which the Sixth Amendment had not yet attached, that is, he was questioned about taking nude pictures of Ashley (possession, receipt and production of child pornography).

> b.    <u>Application of the Cobb holding to the instant case</u>.

On January 6, 2009, defendant was charged in a complaint with the offense of Child Molestation in the First Degree by "knowingly subject[ing] K.N., who was then less than fourteen years old, to sexual contact by placing his hand on the penis of K.N., over the clothing." Gov. Ex. 7.  Child Molestation in the First Degree is defined as: "A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact."   MO. REV. STAT. § 566.067(1) .  Sexual contact is defined as: "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." MO. REV. STAT. § 566.010(3). Under the complaint, then, the State had to prove that (1) defendant subjected K.N. who was less than fourteen years of age to (2) sexual contact by touching K.N.'s genitals through the clothing." See Missouri v. Nibarger, 304 S.W.3d 199, 204 (Mo. Ct. App. 2009) (defining the

elements of Child Molestation in the First Degree.).

Applying Blockburger, as required by Cobb, none of the subsequently charged offenses contain the same elements as the Child Molestation in the First Degree involving K.N.  All the subsequent offenses involved different victims and occurred at a different occasions than that with K.N.  This is true of both the State offenses and federal offenses.  Thus, any statements made by defendant on January 19, 2009, concerning the subsequent charges should not be suppressed.

Det. Cavaletti testified that the purpose of meeting with defendant on January 19, 2009, was to investigate child pornography as a result of the images he had seen on the computer disks that Ms. Day had discovered.  Det. Cavaletti met with defendant to seek permission to search the cameras and black lock box to investigate child pornography, not to investigate Child Molestation of the First Degree in which K.N. was the victim.  Furthermore, he testified that he did not find any images of K.N. on any of the evidence, nor did he uncover, nor attempt to uncover, any other evidence concerning K.N. from the defendant.  Therefore, none of the evidence obtained on January 19, 2009, was obtained in violation of the defendant's Sixth Amendment right to counsel.

Even if child pornographic images of K.N. were found in searching the evidence, as seen in Wood, supra, the evidence would not have violated defendant's Sixth Amendment right to counsel.  Accordingly,  although the defendant was represented by counsel on a State offense, the Sixth Amendment did not prohibit law enforcement from interviewing defendant pertaining to other offenses to which the Sixth Amendment had not yet attached.

        3.    Law Enforcement can ask defendant for consent to search even if the Sixth Amendment right to counsel attached.

16

Even if the Sixth Amendment right to counsel attached, a defendant only has the right to have counsel present at "critical" stages of the criminal proceedings.  Montejo v. Louisiana, 129 S.Ct. 2079, 2085 (2009); United States v. Lewis, 483 F.3d 871, 873-74 (8th Cir. 2007).  A defendant's consent to search is not a critical stage of the proceedings.  United States v. Hidalgo, 7 F.3d 1566, 1570 (11th Cir. 1993);  United States v. Kon Yu-Leung, 910 F.2d 33, 40 (2nd Cir. 1990); Hall v. Iowa, 705 F.2d 283, 189 (1983);  United States v. Cooney, 2002 WL 89664, *8 (6th Cir.).  Thus, law enforcement could have properly requested defendant for permission to search the cameras and black lock box even if the Sixth Amendment right to counsel attached.

4.     The burden of proof of showing a Sixth Amendment violation is with the defendant.

The defendant has the burden of proving a Sixth Amendment violation.  See Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).  Defendant has not met his burden in demonstrating that his Sixth Amendment right to counsel has been violated.

5.     Conclusion

Law enforcement properly asked for defendant's consent to search the cameras and black lock box and did not infringe upon defendant's Sixth Amendment right to counsel because the right to counsel did not attach to any subsequent charge filed by the State of Missouri or by the United States.  Regardless of whether the right to counsel attached, law enforcement could ask defendant for consent to search without violating the Sixth Amendment.

B. Inevitable Discovery

The Sixth Amendment right to counsel was not violated by the officers' actions in

17

seeking consent to search defendant's cameras and black lock box and to respond to defendant's questions.  Furthermore, the inevitable discovery rule shows that defendant's motion to suppress evidence should be denied.  "To prevail under this exception, the government must establish '(1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.'" United States v. Pruneda, 518 F3d 597, 604 (8th Cir. 2008) (citation omitted).

Sgt. Guinn seized the cameras and black lock box from Ms. Moss' residence with her permission on January 16, 2009.  Concerning the investigation, Sgt. Guinn knew, among other things, that Mr. Douglas took defendant's cameras, and other items, to Ms. Moss' residence at the defendant's request after defendant had been arrested and held in jail; Sgt. Guinn knew that Ms. Moss said that defendant's items, including the black lock box, were brought to her residence from the Gamestation Sector 19 store by Mr. Douglas; Sgt. Guinn knew that Ms. Day had observed child pornography on the disks that had been in defendant's vehicle; and Sgt. Guinn knew that Det. Cavaletti reviewed the disks and viewed child pornography, including an image of R.B., a child that Det. Cavaletti had interviewed during the course of the investigation.  Thus, there was probable cause to obtain a search warrant for the cameras and the black lock box.  Sgt. Guinn previously testified that if Ms. Moss would not have given consent, he planned to stay at the residence while other detectives obtained a search warrant.  Accordingly, the government established (1) that there was a reasonable probability that the evidence would have been discovered by lawful means, obtaining and executing a search warrant for the cameras and black lock box, and (2) that Sgt. Guinn was actively pursuing a substantial, alternative line of

18

investigation at the time Sgt. Guinn seized the evidence because he had planned to remain at Ms. Moss' residence while other officers obtained a search warrant.  Thus, at the time the evidence was seized from Ms. Moss' residence, the officers could have obtained a search warrant not only to seize the items but to search them.

Also, on January 19, 2009, law enforcement officers spoke with the State prosecutor about obtaining a search warrant if defendant refused to grant the officers consent to search the cameras and black lock box.  Thus, the officers had actively pursued an alternative line of investigation at the time they asked defendant for consent to search the items.  Probable cause also existed in order to get a search warrant because the officers knew, among other things, that Mr. Douglas took defendant's cameras, and other items, to Ms. Moss' residence at the defendant's request after defendant was arrested and while in jail; they knew that Ms. Moss said that defendant's items, including the black lock box, were brought to her residence from the Gamestation Sector 19 store by Mr. Douglas; they knew that Ms. Day had observed child pornography on the disks that had been in defendant's vehicle; they knew that Det. Cavaletti reviewed the disks and viewed child pornography including an image of a child that he had interviewed during the course of the investigation.   Accordingly, the government established (1) that there was a reasonable probability that the evidence would have been discovered by lawful means by obtaining and executing a search warrant for the cameras and black lock box, and (2) that the officers were actively pursuing a substantial, alternative line of investigation at the time because they had consulted with the State prosecutor about obtaining a search warrant in the event defendant refused to consent to the search.

In conclusion, the evidence alternatively should not be suppressed because the

19

government has established by the use of the Inevitable Discovery Rule that the evidence would have been discovered in any event.

## IV.  CONCLUSION

For all of the foregoing reasons, as well as the reasons contained in the previous memoranda filed by the government, the defendant's motion to suppress evidence and statements should be denied.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney


 *s/ Robert F. Livergood*
ROBERT F. LIVERGOOD, 22937
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

20

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2010, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Ms. Nanci McCarthy
Assistant Federal Public Defender
Office of the Federal Public Defender
1010 Market Street, Suite 200
St. Louis, MO 63101                              _s/ Robert F. Livergood___
                                                 ROBERT F. LIVERGOOD, 22937
                                                 Assistant United States Attorney