IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. S3-4:10CR119 CEJ |
| | ) |
| Leland Beasley | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S OBJECTION TO THE MEMORANDUM AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Comes now Leland Beasley, Defendant, by and through his attorney Assistant Federal Public Defender Nanci H. McCarthy, and files this objection to the *Memorandum and Recommendation of the United States Magistrate Judge*. Defendant moves this Court to not adopt the *Memorandum and Recommendation of the United States Magistrate Judge* and to sustain defendant's previously filed Motions to Suppress Evidence and Statements. In support of this objection, Beasley states:

1. The defendant timely filed Motions to Suppress Evidence and Statements before the United States Magistrate Judge.

2. Hearings on Defendant's motion were held on August 30, 2010 and December 9, 2010.

3. Such motions were denied in part and granted in part, as outlined by the Magistrate's *Memorandum and Recommendation.*

4. Defendant asserts that the *Memorandum and Recommendation of the United States*

*Magistrate Judge* should not be adopted in full because it is contrary to the facts of the case and the relevant case law. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.A. § 636.

5. The Magistrate Judge adopts as fact that two minors, C.D.[1] and B.N., informed law enforcement agents that they viewed "child pornography," specifically, "pictures of naked children," on a computer at Beasley's place of business, Gamestation Sector 19. *Memorandum and Recommendation of Magistrate* (*MRM*), 2. Without conceding the truthfulness of the statements made by C.D. and B.N., or even that the alleged statements were made, Beasley contests the relevance of such allegations in light of the facts that the computer in question was accessible by any patron or employee of Gamestation, no allegations have been made that Beasley is responsible for downloading or viewing images or videos depicting child pornography on the computers at Gamestation, and no evidence supports that Beasley was responsible for any images or videos that may have been viewed or downloaded on the computers in the store. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. "Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

[1] Minor "C.D." is identified as "L.D." in the police report.

6. The Government alleges and the Magistrate Judge adopts as fact that "no threats or promises were made" to Beasley to obtain his consent to search his personal computer and to induce him to go to the police station on January 5, 2009. *MRM*, 3. While Beasley does not contend that explicit statements promising or threatening anything were made, Beasley objects to the inference that police procedures on January 5, 2009 were absent all coercion. For reasons stated in his previously filed motions and memoranda, Beasley alleges that the encounter between him and Detectives Guinn and Cavaletti on January 5, 2009 was, in fact, coercive, and thus all statements made were involuntary and all evidence derived from that encounter was obtained in violation of Beasley's Fourth Amendment rights.

7. The Magistrate Judge adopts as fact that Beasley did not live at Moss's residence, but rather only "sometimes used her address for legal purposes and for his driver's license." *MRM*, 5. However, Beasley evidence shows that Moss's residence was, in fact, his legal residence, and was the location where he slept, where he kept his belongings, where he received his mail, where he bathed and dressed, and where he called "home." Moreover, no evidence shows that Beasley had a different residence. For these reasons, Beasley objects to this finding of fact by the Magistrate Judge.

8. The Government alleges and the Magistrate Judge adopts as fact that law enforcement agents "did not search the digital cameras or the metal box" seized from Moss's residence; Beasley objects to this conclusion which neglects that law enforcement agents did, in fact, search Beasley's items. *MRM*, 5. At Moss's residence, law

enforcement agents searched Beasley's duffel bag - one of the "seven specific items" (*MRM*, 5) Douglas brought to Moss's residence - by rummaging around inside and determining it contained only clothes, thus leaving it behind. Moreover, prior to the encounter between officers and Beasley on January 19, 2009, law enforcement agents unpacked the camera bag and laid out the contents on a table. These searches violate Beasley's Fourth Amendment rights and, being a part of the same search and seizure of the items from Moss's residence, the entire search violates his Fourth Amendment rights. Thus, Beasley objects to the Magistrate's finding of fact that the items seized from Moss's residence were not also searched.

9. The Magistrate Judge concludes as a matter of law that by requesting that his employee Tim Douglas remove specific items from Gamestation and take them to his mother's residence, he "gave Douglas physical control over the cameras and the lock box themselves, and assumed the risk that Douglas would tell others about the existence of these items and show them to others," and also that he "assumed the risk. . . that either Douglas or his mother would show the items to other persons including authorities." *MRM*, 9-10. Specifically, the Magistrate Judge concludes that by not telling Douglas or Moss "to not call the police or not tell third persons" about the items, Beasley exposed himself to risk. *MRM*, 9. Beasley objects to these conclusions, relying on his previously filed motions and memoranda and asserting that his efforts to remove the items in question were for the purpose of protecting those items from exposure. Specifically, as officers noted in the police report, Beasley desired his possessions to be

taken to Moss's residence to ensure they were safe from a burglary - the risk that a third party would view or take the items. Beasley contends that it was clear to Douglas the purpose of his request, and thus objects to the Magistrate's conclusion otherwise.

10. The Magistrate Judge concludes as a matter of law that Beasley's mother, Moss, had "apparent authority," if not actual authority, "to allow the police officers to seize [Beasley's] items." *MRM*, 9. In support of this argument, the Magistrate adopts the case cited by the Government, *United States v. James*, (571 F.3d 707 (7th Cir. 2009)), which holds that a mother who retrieved her son's safe that contained incriminating evidence while the son was away had sufficient authority to allow officers to seize the safe, even if she had no authority to consent to a search of the contents of the safe. *MRM*, 7. The Seventh Circuit in *James* reasoned that the mother had authority to consent to the safe's seizure because she had "joint control" of the safe, even if she could not access the contents, and because no evidence suggests that her son "attempted to limit or restrict her control over the safe." *MRM*, 8-9 (citing *James*, 571 F.3d at 714, 715). Beasley relies on his previous arguments from his motions and memoranda and maintains that unlike *James*, Beasley's request to Douglas to remove the items and take them to Moss's residence for safekeeping - specifically so no third party could access them - was, in fact, an attempt to restrict another's control over his belongings. As such, Beasley objects to the Magistrate Judge's conclusion that *James* is controlling.

11. As argued in his motions and memoranda, Beasley contends instead that *United States*

*v. Mar James* (353 F.3d 606 (8th Cir. 2003)) is controlling, not *James*, because in *Mar James*, the Eighth Circuit held that a third party keeping incriminating items for a defendant did not have authority over those items when the facts of the case were "Taken as a whole." *Mar James*, 353 F.3d at 614. In *Mar James*, the court used the following factors to determine the friend did not have authority over the items: (1) the items were conveyed to the friend for the "sole purpose of storing them"; (2) the items were stored in "sealed envelopes" using "tape"; (3) the defendant "never told [the friend]'go ahead and look at these'"; (4) the defendant "asked only that [the items] be stored"; (5) the items were marked "confidential" and "private"; and, (6) although no one knew this until after the fact and so this factor is irrelevant for the present analysis, "the disc could not be opened on just any computer." *Id*. at 614-15. Here, although the items Beasley had Douglas convey to his mother (5) were not explicitly marked "confidential," in no way did Beasley suggest to Douglas or Moss that (3) they should "go ahead and look at these." Moreover, writing "confidential" on a canvas bag or a metal box is not realistic, given the nature of the material. Additionally, the fact that Beasley's items were not "taped" also should not be dispositive, given that in *Mar James*, the items were in a paper envelope - something naturally taped shut. Here, the items were (2) equivalently "sealed" in closed storage containers - a zipped duffel bag, a latched camera case, and a locked metal box. "Taping" these items shut would be rather uncommon and should not be expected, whereas using expected methods of "sealing" these containers - the attached locks, latches, and zippers, should be a

sufficient equivalent to tape on a paper envelope. Moreover, while tape in no way prevents a person from opening a paper envelope, a combination lock on a metal box certainly does - further evidence that Beasley intended that no one "go ahead and look at" his items. Finally, just like in *Mar James*, Beasley's items (1) were conveyed to Moss for the "sole purpose of storing them" and (4) Beasley "asked only that [the items] be stored." Simply, Beasley instructed Douglas to remove his items from Gamestation and take them to Moss for storage and safekeeping; he did not invite Douglas or anyone to look at the items, and, in light of the fact that he was seeking the items' protection from burglary, it is clear his intent was to protect them from third party access. As such, Beasley objects to the Magistrate Judge's conclusion of law that *Mar James* is inapposite, and in support of this contention, Beasley relies on these assertions and his previously filed motions and memoranda.

12. The Magistrate Judge concludes as a matter of law that Beasley's items at Moss's residence were in "plain view," and thus could be seized by officers. Beasley objects to this interpretation of "plain view" on the facts that officers visited Moss for the sole purpose of retrieving the items in question, and after asking for the items specifically, Moss walked to another room in the back of her house, retrieved the named items, and returned to hand the officers the items they requested. "The plain-view exception allows officers to seize contraband or other evidence of a crime in limited situations," so long as three conditions are met: (1) if the officers are lawfully in a position from which they view the object; (2) the incriminating character of the object is immediately

apparent; and (3) the officers have a lawful right of access to the object. *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010). The Magistrate Judge concludes that "as soon as the police observed the two cameras and the lock box, they could seize the items because they were lawfully in their plain view." *MRM*, 10. However, Beasley objects that by explicitly asking Moss to retrieve the "seven specific items" Douglas delivered, the items were not, in fact, in "plain view." As the Supreme Court has explained, "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry," and in light of that reasoning held, "'looking at a suspicious object in plain view and moving it even a few inches' is much more than trivial for purposes of the Fourth Amendment." *Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987). Here, "when the police went to the mother's house and asked to see [the items]" (*MRM*, 9), they improperly "manipulate[d] the physical environment within the home with the intent to uncover information." *United States v. Trower*, 285 F. App'x. 321, 323-24 (8th Cir. 2008) (citing *Hicks,* 480 U.S. at 324-25; and distinguishing *United States v. Banks,* 514 F.3d 769, 773 (8th Cir.2008) (where officers did not violate the "plain view" exception "merely by using their eyes"); *United States v. Dunn,* 480 U.S. 294, 305 (1987) (where officers did not violate the "plain view" exception by using a flashlight)). By asking Moss for the items and prompting Moss to go to the back bedroom and retrieve then deliver those items, officers clearly "manipulated" the environment, much more so than looking under

a speaker in plain view for serial numbers, thus violating Beasley's Fourth Amendment rights.

13. The Magistrate Judge concludes as a matter of law that law enforcement agents seeking Beasley's consent to search on January 19, 2009 without providing the protections of *Miranda* and without his appointed attorney present is neither a Fifth or Sixth Amendment violation on the bases that consents to search are not testimonial and do not comprise a "critical stage" of an investigation. *MRM*, 13-16. Beasley objects to these conclusions, relying on his previously filed motions and memoranda.

14. The Magistrate Judge concludes as a matter of law that Beasley's consent to search the items obtained from Moss was voluntary and uncoerced. *MRM*, 17-19. Beasley objects to this conclusion, relying on his previously filed motions and memoranda and asserting that the scenario was, in fact, coercive. Beasley specifically objects to the Magistrate's conclusion that the conversation about the lock box prompted by officers in violation of Beasley's Fifth and Sixth Amendment rights "had nothing to do with the voluntariness of the consent," contending that the conversation did, in fact, enhance the already coercive atmosphere of the interrogation. *MRM*, 18. Forcing Beasley to comment on his ownership of the lock box, even if those statements are suppressed, unfairly affected Beasley's ability to refuse consent; moreover, in light of the fact that the entire interrogation was held in violation of Beasley's Fifth and Sixth Amendment rights, it is clear that the entire encounter was coercive overall. Thus, based on the totality of circumstances, Beasley's January 19, 2009 consent to search was involuntary due to the

violations of his constitutional rights and thus should be suppressed.

15. Beasley objects to the Magistrate Judge's conclusion that per the doctrine of inevitable discovery, the items in question would have been lawfully found by other means (*MRM*, 19-20), relying on his previously filed motions and memoranda.

16. Beasley objects to the Magistrate Judge's conclusion that his encounter with officers at Gamestation on January 5, 2009 was not custodial. *MRM*, 20-23. Relying on his previously filed motions and memoranda, Beasley also contends that officers gained no new evidence from the encounter on January 5, 2009. However, despite gaining no new evidence, officers *Mirandize* Beasley mid-way through their encounter. Moreover, as the officers arrested Beasley on January 5, 2009 despite not gaining new evidence from their encounter with Beasley, evidence shows that officers visited Beasley on January 5, 2009 with the express intention and purpose of arresting him for the accusations of child molestation. Thus, it was improper for officers not to *Mirandize* Beasley from the start. Essentially, law enforcement agents side-stepped the law when they questioned and removed Beasley from his place of business prior to *Mirandizing* him; as such, the encounter was violative of his Fifth Amendment rights.

17. Beasley relies on his previously filed motions and memoranda to support his contention that it was not, in fact, reasonable to think he was not in custody at Gamestation on January 5, 2009, based on the totality of circumstances, and thus objects to the Magistrate Judge's conclusion of law on this point. *MRM*, 23.

18. Beasley objects to the Magistrate Judge's conclusion that his consents to search were

voluntary on January 5, 2009, relying on his previously filed motions and memoranda. *MRM*, 24-25. In particular, Beasley objects to the Magistrate's inference that because he had been arrested before, he should have understood his rights (*MRM*, 25); Beasley contends that the opposite is true, given that in prior "experience[s] with the police in similar cases" (*Id*.), Beasley was falsely accused and the charges were dropped, then later falsely charged, taken to trial, and ultimately acquitted of all accusations. These facts support that rather than be confident of his rights, Beasley was instead fearful of all encounters with law enforcement agents and more vulnerable than even an inexperienced defendant, having been wronged numerous times in the past.

WHEREFORE, Defendant Beasley respectfully requests that the District Court adopt the Magistrate Judge's recommendation that all of Beasley's "statements as to ownership of the box and cameras, including statements about the combination of the box" (*MRM*, 25) be suppressed, but that the District court refuse to adopt the remainder of the Magistrate Judge's *Memorandum and Recommendation*, and hereby moves this Court to sustain Defendant's previously filed motions to suppress evidence and statements and all supporting memoranda.

Respectfully submitted,

/s/Nanci H. McCarthy
Nanci H. McCarthy
Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255

Fax: (314) 421-3177
E-mail: Nanci_H_McCarthy@fd.org
ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon, Robert Livergood, Assistant United States Attorney.

/s/Nanci H. McCarthy
Nanci H. McCarthy
Assistant Federal Public Defender