UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. S-3 4:10 CR 119 CEJ ) |
| LELAND BEASLEY, | ) ) |
| Defendant. | ) |

**GOVERNMENT'S TRIAL BRIEF**

COMES NOW, the United States of America, by and through Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Robert F. Livergood, Assistant United States Attorney for said District, and submits the following trial brief.

I.  Overview of the Facts

Defendant owned and operated several different Gamestation Sector 19 (hereinafter, "Gamestation") stores between March 2006 and January 2009. Gamestation stores were video arcades where children could play video games for a fee. Defendant also hosted "lock-ins" at the stores at which children paid a fee to play video games and sleep overnight.

On January 5, 2009, Detective Tony Cavaletti of the St. Louis County Police Department was notified that defendant inappropriately touched a child. On the same date, Det. Cavaletti began to investigate the allegation. He met with K.N., a twelve-year-old child who made the allegation. K.N. said that in December 2008, while he was at the Gamestation located at 710 Lemay Ferry Road, defendant touched K.N.'s penis through the clothing. K.N. said that defendant tried to put his hand into K.N.'s pants. K.N. also identified other children whom he

1

believed were molested by defendant.  Det. Cavaletti met with other children concerning the statements K.N. made.  After his interviews were completed for the day, he and Sergeant Gary Guinn went to meet with defendant.

Det. Cavaletti and Sgt. Guinn went to the Gamestation store located at 710 Lemay Ferry Road.  There, they met with defendant and spoke with him briefly.  Defendant agreed to go with Det. Cavaletti to the St. Louis County Police Headquarters to be interviewed.

At police headquarters, defendant agreed to speak with Det. Cavaletti and Sgt. Guinn after being read and waiving his Miranda rights.  He said he was the owner of the Gamestation stores.  He said had owned several different Gamestation stores along Lemay Ferry Road, but never more than one at a time.  The defendant said that he had a few employees in their middle to late teens.  He also hired a few younger boys to restock and clean the store.  Defendant said that the customers either paid by the hour to play video games at the store or received a membership.  He said he hosted "lock-ins" at his Gamestation store.  The "lock ins" began at 6:00 p.m. and ended at 6:00 a.m.  At the "lock-ins" the children played games and if they became tired, they slept in the store.

Defendant said that on a few occasions he took some of the children with him on vacation out of the state.

When asked if he ever inappropriately touched a child, defendant denied that he had touched a child.  When he was asked about K.N., defendant said K.N. had spent the night at his store before.  He said he never intentionally touched K.N. inappropriately.  On one occasion, however, defendant said that he remembered accidentally touching K.N.'s penis on the top of the clothing.  He again denied ever intentionally touching a child inappropriately.  He became

2

emotional in front of the police and said he had a problem and needed help.  At the conclusion of the interview, defendant was arrested and charged in state court for molesting K.N.

Det. Cavaletti continued his investigation.  He and Detective Barbara Lane met with one of defendant's employees, Tim Douglas.  Mr. Douglas told the detectives that after the defendant was arrested, the defendant called from jail and asked him to take some items to the residence of defendant's mother, Leslie Moss.  Mr. Douglas took a digital camera, video camera, and other items to defendant's mother's residence.

On January 7, 2009, unbeknownst to Det. Cavaletti or Sgt. Guinn, defendant called his mother, Ms. Moss, from the St. Louis County Jail.  The telephone calls from St. Louis County jail were recorded and the defendant was aware that the telephone calls were recorded.  During the course of the telephone conversation, defendant asked his mother to destroy some evidence.  In particular, he asked his mother to destroy computer disks that Mr. Douglas had taken to her residence.  On January 8, 2009, defendant again called his mother.  Using coded language, he again asked his mother to destroy evidence, which included a lock box that contained cameras and recorded material, as well as recorded evidence on cameras and video cameras.

On January 9, 2009, defendant's ex-wife, Mary Day, contacted the St. Louis County Police Department concerning defendant.  On January 13, 2009, Sgt. Guinn met with Ms. Day and interviewed her.  Ms. Day said she met defendant in early 2005 through an internet web site.  She said they married in June of 2005, and he and his son, Miceah, moved in with her.  She said that one of Miceah's friends, M.T., a minor male, had gone on vacations out of town with defendant.  At one point she told the suspect not to be around M.T. anymore because she thought it was inappropriate.  Even after she told defendant this, defendant continued seeing M.T.

3

Ms. Day filed for a divorce after only three months of marriage. Ms. Day said that as part of the divorce, she was to get their automobile. She went to defendant's Gamestation store located in Missouri and retrieved the vehicle. After she retrieved the vehicle, she went through it to return items that belonged to defendant. She found several computer CDs and viewed some of them on her computer. When she viewed the CDs, she saw images of child pornography. She turned the CDs over to the St. Clair County Sheriff's Department in Illinois. The CDs were seized on August 28, 2007, by the St. Clair County Sheriff's Department. Det. Cavaletti seized the disks from the St. Clair County Sheriff's Department on January 15, 2009.

On January 16, 2009, Sgt. Guinn interviewed defendant's mother, Leslie Moss. She said she received a phone call from defendant the night he was arrested. She said that a man brought some of defendant's personal items from the Gamestation store to her residence which included two cameras. She gave Sgt. Guinn permission to seize various items. Sgt. Guinn seized, among other things, a Sony digital camera, Sony Handycam HDD, and a metal lock box.

Subsequently, on January 16, 2009, defendant called his mother from jail. Ms. Moss informed the defendant that she did not destroy the evidence that Mr. Douglas had brought to her house and that the detectives seized some of it.

Later that same day, Det. Cavaletti reviewed defendant's disks that Ms. Day had provided to the St. Clair County Sheriff's Office. All the disks were made outside the state of Missouri. The disks contained hundreds of images of male children engaged in sexually explicit conduct. Some of the images were taken with a camera with the same model number as that of defendant's camera. Some of the images appeared to have been taken at defendant's Gamestation store located at 710 Lemay Ferry Road. There was a folder labeled "KJC" located

on one of the disks.  Eighteen photographs were contained in the folder and the images depicted two different children.  One image portrayed a child with his penis exposed while he slept.  The eighteen photographs were taken by a camera, model number "DSC-W100," the same model number as one of defendant's cameras seized from defendant's mother's residence.

Another disk contained forty-three images of three different children.  The forty-three images were taken by a camera, model number "DSC-W100," the same model as defendant's camera seized from Ms. Moss.  One of the children whose images appeared on the disks was R.B.  Some of the images depicted R.B. in a lascivious display of his genitals while he appeared to be sleeping. At the time the images were produced, R.B. was no more than twelve years old.

On January 19, 2009, Det. Cavaletti and Detective Matthew Brillos met with defendant at the St. Louis County Jail regarding the evidence of the additional crimes.  Defendant went with the officers to the St. Louis County Police Headquarters to be interviewed.  Defendant freely and voluntarily consented and gave the police permission to search the seized items: the lock box; the Sony Digital Camera, model number DSC-W100 (hereinafter, "Sony DSC-W100); and the Sony Handycam HDD.  The metal lock box was subsequently opened and contained, among other things, a Sony Handycam with video Hi8 capabilities (hereinafter, "Sony Handycam Hi8), CDs and DVDs.  Some of the items were dusted for fingerprints.  Subsequently, Det. Cavaletti was notified that latent prints on a CD cover and a CD found in defendant's lock box were identified as the defendant's prints.

The CDs, DVDs, cameras, and other devices were turned over to Detective Patrick Wilds of the St. Louis County Police Department.  Det. Wilds is assigned to the Regional Computer Crimes Education and Enforcement Group (RCCEEG).  Det. Wilds forensically analyzed the

5

CDs, Sony Handycam HDD, DVDs, Sony memory stick, a Kodak digital camera, Sony DSC-W100, 3.5" diskettes, and other items.  During his forensic analysis, Det. Wilds located approximately 34,631 image files and 613 video files of child pornography.

Det. Wilds examined the Sony Handycam HDD seized from the house of defendant's mother.  The Sony Handycam HDD was produced outside the State of Missouri.  Det. Wilds found that the Sony Handycam HDD contained a Toshiba hard drive.  Det. Wilds forensically examined the Sony Handycam HDD's hard drive and found that it contained video images that the defendant produced of male children during "lock-ins" at his Gamestation stores.  Some of the minor male children were: B.N., K.A., R.B., T.R., R.I., Victim A and Victim B.  In general, these videos depicted the children in a lascivious display of their genitals while they slept.  One of the videos also showed a child's genitals being fondled while he slept.  B.N. and K.A. were no more than twelve years of age when the images were produced.  R.B. was no more than thirteen years of age when the images were produced.

Det. Wilds also found on the Sony Handycam HDD's hard drive, a video of M.H., a minor.   Defendant took M.H. on a trip outside the State of Missouri.  While outside the State of Missouri defendant made a video of M.H. in a lascivious display of his genitals. Upon the completion of the trip, defendant returned to the State of Missouri and brought the video of M.H. with him to the Eastern District of Missouri.

Det. Wilds examined the CDs and DVDs contained in defendant's strong box.  The disks were produced outside the state of Missouri.  The disks contained images of prepubescent males in a lascivious display of their genitals.

The video tapes that were found inside the lock box were also examined.  The video tapes

showed that defendant sexually abused M.T. while M.T. was a minor. During his sexual abuse of M.T., defendant used the Sony Handycam Hi8 and video tapes to produce videos of defendant placing his mouth on M.T.'s penis and inserting his penis into M.T.'s anus. The video was produced in the Eastern District of Missouri. The Sony Handycam Hi8 and video tapes were produced outside the State of Missouri.

    II.    <u>Legal Issues</u>

        A.    <u>Elements of the Offense of Sexual Exploitation of a Minor</u>

The Indictment charges defendant in Counts One, Two, Three, Four, Seven, Eight, and Nine, with Sexual Exploitation of a Minor in violation of Title 18, United States Code, Section 2251(a). The essential elements of this violation of Title 18, United States Code, Section 2251(a) are: (1) defendant knowingly used a minor to engage in sexually explicit conduct, (2) for the purpose of producing a visual depiction of such conduct, and (3) said visual depiction was produced using materials that have been transported in interstate commerce.

        B.    <u>Elements of the Offense of Attempted Sexual Exploitation of a Minor</u>

In Counts Five and Six, defendant is charged with Attempted Sexual Exploitation of a Minor in violation of Title 18, United States Code, Section 2251(a). The essential elements of this violation of Title 18, United States Code, Section 2251(a) are: (1) defendant knowingly attempted to use a minor to attempt to engage in sexually explicit conduct, (2) for the purpose of producing a visual depiction of such conduct, and (3) said visual depiction of the attempt to engage in sexually explicit conduct was produced using materials that have been transported in interstate commerce.

      C.      Elements of the Offense of Sexual Exploitation of a Minor where the Image is Transported in Interstate Commerce

In Count Ten, defendant is charged with Sexual Exploitation of a Minor where the image is transported in interstate commerce in violation of Title 18, United States Code, Section 2251(a). The essential elements for this offense are that: (1) defendant knowingly used a minor to engage in sexually explicit conduct, (2) for the purpose of producing a visual depiction of such conduct, and (3) said visual depiction was actually transported in interstate commerce.

      D.      Elements of the Offense of Possession of Child Pornography

In Counts Eleven and Twelve, defendant is charged with Possession of Child Pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B). The essential elements of this offense are: (1) defendant knowingly possessed material (2) that contained images of child pornography (3) which were visual depictions where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct (4) that was produced using materials that have been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer.

      E.      Definitions

"Sexually explicit conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, oral-anal, whether between persons of the same or opposite sex; masturbation; and the lascivious exhibition of the genitals or pubic area of any person.

Defendant is charged in Counts One through Ten with Sexual Exploitation of a Minor or Attempt Sexual Exploitation of a Minor for the videos contained on his Sony Handycam HDD

and on video tapes. Counts One through Four, and Counts Seven through Ten depict minor male victims in a lascivious display of their genitals, and some depict their penises being fondled. Counts Five and Six depict an attempt to display two other minor males' penises while they slept.

The definition of "sexually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area of any person." Title 18, United States Code, Section 2256(2)(A)(v). The Eight Circuit Court of Appeals held that "when the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer, the depiction is lascivious." United States v. Horn, 187 F.3d 781, 789 (8th Cir. 1999).

The Eighth Circuit Model Pattern Instruction "6.18.2252A. 'Lascivious' Explained" states:

> Whether a visual depiction of the genitals or pubic area constitutes a lascivious exhibition requires a consideration of the overall content of the material. You may consider such factors as (1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether the setting of the picture is sexually suggestive, that is, in a place or pose generally associated with sexual activity; (3) whether the minor is depicted in an unnatural pose or in inappropriate attire, considering the age of the minor; (4) whether the minor is fully or partially clothed, or nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the picture is intended or designed to elicit a sexual response in the viewer; (7) whether the picture portrays the minor as a sexual object; and (8) the caption(s) on the picture(s).
> It is for you to decide the weight or lack of weight to be given to any of these factors. A picture need not involve all of these factors to constitute a lascivious exhibition of the genitals or pubic area.

The instructions are based on the widely-cited case of United States v. Dost, 636 F.Supp. 828, 832 (S.D. Cal. 1986), aff'd sub. nom. United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987) with additional factors noted in United States v. Arvin, 900 F.2d 1385 (9th Cir. 1990) and Horn.

      F.      Federal Jurisdiction

The jurisdictional basis for prosecution of Sexual Exploitation of a Minor based upon the materials being transported in interstate commerce has been approved. United States v. McCloud, 590 F.3d 560, 568 (8th Cir. 2009); United States v. Pliego, 578 F.3d 944 (8th Cir. 2009). The Government will introduce business records or trade inscriptions that indicate the cameras, tapes and CDs were produced outside of Missouri. Fed. Rule Ev. 902(4) and (7).

The jurisdictional basis for the prosecution of Sexual Exploitation of a Minor based upon the images being transported in interstate commerce has been approved. United States v. Griffith, 284 F.3d 338, 347 (2nd Cir. 2002). When the prosecution is based on the image being transported in interstate commerce, venue is proper where the offense "started, continued, or completed." United States v. Kapordelis, 569 F.3d 1291, 1307 (11th Cir. 2009).

      III.      Evidentiary Issues

      A.      Business Records

The Government intends to introduce business records. The Government has previously filed notices of its intent to use these items and anticipates filing another on this date. Defense counsel has been provided with copies of the records that the Government possesses.

Rule 803(6) of the Federal Rules of Evidence provides that records of regularly conducted activity may be admitted by certification that complies with Rule 902(11). Rule 902(11) requires that the party intending to offer the record must provide written notice and must make the record and declaration available for inspection. The Government has complied with these and will continue to comply with these requirements and intends to introduce these records at trial. The records establish that the Memorex CDs, TDK CDs and Sony Handycam video

cameras were manufactured outside Missouri and therefore have traveled in interstate commerce.

   B.   Birth Certificates

The Government intends to introduce birth certificates of several of the alleged victims. The Government has previously filed notices of its intent to use birth certificates at trial. Defense counsel has been provided with copies of the redacted birth certificates.

   Rule 902(4) of the Federal Rules of Evidence provides that:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certificates, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

The birth certificates will be used to establish that the victims were minors during the time periods charged in the Indictment.

   C.   Product Labels

The Government will introduce evidence of product labels to indicate ownership and origin for the cameras, CDs and tapes. "Extrinsic evidence of authenticity is not required with respect to . . . [i]nscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control, or origin." Fed. Rule. Ev. 901(7). See United States v. Koch, 625 F.3d 470, 479-80 (8th Cir. 2010); United States v. Henry, 3804, Slip Op. No 09-2010 WL 4845742, *1 (8th Cir. Nov. 30, 2010). Defense counsel has viewed the evidence in this matter.

11

   D. Evidence of Defendant's Prior Molestations and other Images of Child Pornography

The Government filed its notice of intent to offer evidence of defendant's prior molestations and evidence of child pornography images that the defendant possessed pursuant to Rules 404(b) and 414 of the Federal Rules of Evidence. A full discussion of the evidence and legal authority is contained within the Government's notices (Documents 146 and 149).

   E. Evidence of Defendant's Recorded Telephone Calls

The Government filed its notice of intent to offer testimony pertaining to and evidence of recorded jail phone calls defendant made to his mother, Leslie Moss, requesting, either directly or in coded language, that she destroy some of the evidence that Mr. Douglas took to defendant's mother's residence. In response, defendant filed his motion in limine seeking to "preclude the Government and its witness from making unauthorized and inappropriate interpretations of fact." Defendant Beasley's Motion in Limine to Exclude any Interpretation of Jail Calls by Non-Expert Witness at 3. The Government does not intend to offer expert testimony concerning the meaning of the language used in the telephone calls, nor does it intend to offer a nonparticipant's lay opinion of the language used it the recordings. However, during closing argument, the Government can argue the evidence and reasonable inferences that may be drawn from it. United States v. Mullins, 446 F.3d 750, 760 (8th Cir. 2006). "[T]he prosecutor may use 'colorful pejoratives' and argue a personal interpretation of the evidence." United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001) (citation omitted); Mullins, 446 F.3d at 760. Thus, the Government should not be precluded from arguing reasonable inferences that can be drawn from defendant's jail telephone calls.

         Respectfully submitted,

>RICHARD G. CALLAHAN
>United States Attorney
>
>
> *s/ Robert F. Livergood*
>ROBERT F. LIVERGOOD, #22937
>Assistant United States Attorney
>111 S. 10th Street, Rm. 20.333
>St. Louis, Missouri 63102
>(314) 539-2200

CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2011, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Nanci H. McCarthy
Assistant Federal Public Defender
FEDERAL PUBLIC DEFENDER
1010 Market Street, Suite 200
St. Louis, MO 63101

>s/*Robert F. Livergood*
>ROBERT F. LIVERGOOD, #22937
>Assistant United States Attorney

13